UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANGEL ANTHONY FERNANDEZ,

Petitioner,

v.

DAN WHITE,

Respondents.

CASE NO. 3:18-cv-05115-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: JULY 6, 2018

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner filed the petition pursuant to 28 U.S.C. § 2254.

Petitioner alleges that he was convicted of two crimes in violation of his protections against double jeopardy, and that he was unconstitutionally denied counsel when he filed a post-conviction motion to dismiss one of his convictions. However, petitioner has failed to exhaust either of these grounds in state court and, since the statute of limitations has run on his state post-

REPORT AND RECOMMENDATION - 1

conviction relief, he is now barred from exhausting those grounds in state court. Therefore, the Court recommends that petitioner's habeas petition be denied because it is unexhausted and now procedurally defaulted.

## PETITIONER'S GROUNDS IN THIS HABEAS PETITION

1) Petitioner claims that his convictions for both aggravated first degree murder and first degree felony murder violated his protection against double jeopardy; and

2) Petitioner claims that he was unlawfully denied the right to assistance of counsel at a critical stage of his proceedings.

## BASIS FOR CUSTODY AND FACTS

Petitioner was convicted of aggravated first degree murder and first degree felony murder. He was sentenced to life without the possibility of parole as to the first degree aggravated murder conviction and is currently incarcerated at the Washington Corrections Center.[1]

The Washington Court of Appeals stated the facts of petitioner's case as follows:

[Ed] Ross, [Paul] Sarkis, and Fernandez were in the drug business. Ross was the dealer, Sarkis the delivery man, and Fernandez the debt collector. Sarkis introduced [Jesse] Osalde, a high school friend, to Fernandez. Osalde did not regularly participate in the drug business; but Osalde, along with others, regularly used the drugs.

In October 1999, Fernandez and Ross had an argument over an outstanding debt. This argument spawned the following sequence of events. On the morning of October 10, 1999, Ross and his girlfriend, Cat Fischer, planned to pick up some methamphetamine at a house on Whidbey Island. While waiting in line for the ferry, Ross had a heated cell phone conversation with Fernandez. About two minutes after the phone call, Fernandez and Osalde, displaying a knife and gun respectively, entered Ross's vehicle.

Fernandez said "[g]ive me your gun, your wallet, your drugs, your money." At Fernandez's instruction, Ross drove the vehicle out of the ferry line and proceeded through Mukilteo to I-5 south. Sarkis and Talee Coulter followed in Sarkis's Ford

---

[1] Though petitioner was convicted of both aggravated first degree murder and first degree felony murder, the trial court only imposed sentence on the aggravated first degree murder conviction.

Explorer. Eventually, the group split up so that Ross, Fernandez, and Sarkis rode in Sarkis's vehicle, while Coulter and Osalde drove Fischer home.

That evening, Fernandez, Osalde, and Sarkis held Ross in the basement of Coulter's home. The following day, Fernandez, Osalde, and Sarkis transported Ross to some property that Fernandez claims his family owned in Rose Valley. There, Ross was murdered.

According to Sarkis, the sequence of events at the murder was as follows: Sarkis observed Ross running from behind a large bush while blood ran from his neck. Ross ran to the front of Sarkis's vehicle, with Fernandez about 20 feet behind, and then collapsed. Fernandez then picked Ross up, hit him in the face, "stomped" on his head, and made two stabbing motions at Ross with a knife.

After Ross fell, Fernandez tried to drag him into the bushes. Finding Ross too heavy, Fernandez told Sarkis and Osalde to help. The three carried Ross, who was moaning and flailing, "into the woods." When Sarkis returned to his vehicle, he cleaned blood off the front of the car with "[b]eer and the shirt that Ed was wearing."

When the three men left the property, Sarkis heard Fernandez state that "he loves it when he takes somebody's soul[.]" Prior to returning to Seattle that evening, the men disposed of Ross's clothes in garbage dumpsters.

Fischer called the FBI on Tuesday, October 12, 1999. The next day, a Mukilteo police officer arrested Fernandez. Osalde was arrested in another state. On November 18, 1999, the Cowlitz County Prosecutor charged Osalde and Fernandez with murdering Ross and kidnapping Fischer. Count I of the information alleged first degree murder by "Aggravated Murder . . . and/or Felony Murder." Count II charged "Kidnapping In The First Degree."

Trial was to a jury. . . . The jury found Fernandez guilty of first degree aggravated murder and first degree felony murder. The trial court sentenced Fernandez to life in prison without the possibility of parole.[2]

Dkt. 10, Ex. 4 at pp. 1-3; *State v. Osalde*, Nos. 26327-1-II, 26342-4-II, 2003 WL 1875588 at *1-*2 (April 15, 2003) (citations to the record omitted).

---

[2] The kidnapping charges are not at issue on appeal. [footnote by Court of Appeals.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**PROCEDURAL HISTORY**

**I.      Direct Appeal**

Plaintiff appealed his conviction to the Washington Court of Appeals, arguing that his speedy trial rights were violated under Washington Rule of Criminal Procedure 3.3, and that the trial court improperly failed to suppress Paul Sarkis's testimony. Dkt. 10, Ex. 2. The Washington Court of Appeals consolidated his appeal with that of co-defendant Osalde and denied it as to both grounds. *Id.*, Ex. 4. Plaintiff filed a motion for reconsideration (*Id.*, Ex. 5), but did not request review from the Washington Supreme Court. The Washington Court of Appeals denied reconsideration (*Id.* Ex. 6), issued its mandate on October 8, 2003 (*Id.*, Ex. 7), and issued an amended mandate on November 5, 2003 (*Id.*, Ex. 8).

Represented by counsel, petitioner filed a personal restraint petition ("PRP") arguing that he had been improperly convicted based on a legislatively unauthorized strict liability basis. *Id.*, Ex. 9. The Washington Court of Appeals denied the petition (*Id.*, Ex. 14) and petitioner filed a motion for discretionary review with the Washington Supreme Court (*Id.* Ex. 15). The Washington Supreme Court commissioner denied review (*Id.*, Ex. 18) and petitioner filed a motion to modify (*Id.*, Ex. 19). The Washington Supreme Court denied his motion without comment. *Id.*, Ex. 20.

**II.     Motion Pursuant to CrR 7.8**

On May 14, 2015, petitioner filed a "motion to dismiss one of two murder convictions as violative of double jeopardy" in superior court. Dkt. 10, Ex. 24 at p. 78-80. Petitioner also filed a motion to appoint counsel. *Id.*, Ex. 25 at p. 113. He finally filed a "motion for new trial/motion to vacate" on July 21, 2015, asking the superior court to vacate his aggravated first degree murder conviction. *Id.*, Ex. 24 at pp. 81-84.

1    Petitioner appeared before the superior court on July 17, 2015, and again requested

2  counsel. *Id.*, Ex. 22 at pp. 5-8. The superior court denied his request, noting that petitioner had

3  cited no authority entitling him to counsel at that stage. *Id.* at pp. 7-8. Petitioner and the State

4  both appeared before the Court again on July 21, 2015, and presented argument on petitioner's

5  double jeopardy claim. *Id.*, Ex. 22 at pp. 9-27. The State agreed with petitioner that the original

6  judgment and sentence should not have included both a conviction for aggravated first degree

7  murder and first degree felony murder, but noted that petitioner had never actually been

8  sentenced on the first degree felony murder conviction. *Id.* at pp. 18-19; Ex. 25 at pp. 116-117.

9  The State prepared an amended judgment and sentence omitting the felony murder charge, which

10  petitioner refused to sign. *Id.*, Ex. 22 at pp. 9-11, 47-49. Petitioner's sentence remained

11  unchanged. *Id.*, pp. 47-49.

12    Petitioner, represented by counsel, appealed the superior court's decision, arguing he had

13  been denied counsel improperly under Washington Rules of Criminal Procedure 3.1 and 7.8.

14  Dkt. 10, Ex. 26. Petitioner filed a *pro se* statement of additional grounds, raising judicial

15  misconduct, prosecutorial misconduct, and fair trial arguments, but omitting his double jeopardy

16  argument. *Id.*, Ex. 27. The Washington Court of Appeals found that petitioner had been

17  improperly denied counsel at the superior court level based on Washington law, but also found

18  that the error was harmless. *Id.*, Ex. 29. That court also declined to examine petitioner's

19  additional grounds because he had failed to raise them in his direct appeal. *Id.* Petitioner filed a

20  motion for reconsideration (*Id.*, Ex. 30), which the Washington Court of Appeals denied (*Id.*, Ex.

21  31).

22    Petitioner, again proceeding *pro se*, filed a motion for discretionary review with the

23  Washington Supreme Court. Dkt. 10, Ex. 34. In it, he again raised his double jeopardy argument,

24

1    as well as arguing that he was improperly denied counsel pursuant to Washington Rule of

2    Criminal Procedure 3.1. *Id*. The Washington Supreme Court denied review without comment.

3    *Id*., Ex. 36.

4    **III.    Previous Habeas Petition**

5    Petitioner also filed a federal petition for a writ of habeas corpus on May 14, 2012. Dkt.

6    10, Ex. 38. He argued that he was convicted of a nonexistent crime. *Id*. The District Court,

7    adopting a report and recommendation from this Court, denied the petition as time barred. *Id*.,

8    Exs. 40, 41. The Ninth Circuit Court of Appeals subsequently denied a certificate of

9    appealability. *Id*., Exs. 43, 44.

10    **STANDARD OF REVIEW**

11    Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

12    petition may be granted with respect to any claim adjudicated on the merits in state court only if

13    the state court's decision was contrary to, or involved an unreasonable application of, clearly

14    established federal law, as determined by the Supreme Court, or if the decision was based on an

15    unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

16

17    **EVIDENTIARY HEARING**

18    The decision to hold a hearing is committed to the Court's discretion. *Schriro v.*

19    *Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

20    could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

21    the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief

22    is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

23    state court. *Cullen*, 131 S.Ct. at 1388. A hearing is not required if the allegations would not

24

REPORT AND RECOMMENDATION - 6

1    entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that

2    if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a

3    district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct. 1388

4    (2011).

5          Here, petitioner's claims rely on established rules of constitutional law. There are no

6    factual issues that could not have been previously discovered by due diligence. Finally, the facts

7    underlying petitioner's claims are sufficient to establish that a rational fact finder would have

8    found him guilty of the crime. Therefore, the Court concludes that an evidentiary hearing is not

9    necessary to decide this case and petitioner's claims may be resolved on the existing state record.

10    **DISCUSSION**

11    **I.    Exhaustion and Procedural Default**

12        *A.  Exhaustion*

13          A state prisoner seeking habeas corpus relief in federal court must exhaust available state

14    relief prior to filing a petition in federal court. *See* 28 U.S.C. § 2254. Claims for relief that have

15    not been exhausted in state court are not cognizable in a federal habeas corpus petition. *James v.*

16    *Borg,* 24 F.3d 20, 24 (9th Cir. 1994). A petitioner must properly raise a habeas claim at every

17    level of the state courts' review. *See Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992).

18    "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional

19    issues by invoking one complete round of the State's established appellate review process."

20    *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Rose v. Lundy*, 455 U.S. 509, 518-19

21    (1982). A complete round of the state's established review process includes presentation of a

22    petitioner's claims to the state's highest court. *James,* 24 F.3d at 24.

23

24

"Fair presentation" requires that the prisoner alert the state courts to the fact that he is asserting claims under the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). The prisoner must specifically characterize his claims as federal claims, either by referencing specific constitutional provisions or by citing to relevant federal case law. *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *opinion amended*, 247 F.3d 904 (9th Cir. 2001). The prisoner also "must describe in the state court proceedings both the operative facts and the federal legal theory on which his claim is based." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). General appeals to broad constitutional principles such as due process, equal protection, or the right to a fair trial are not sufficient. *Hiivala v. Wood*, 195 F. 3d 1098, 1106 (9th Cir. 1999). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985). Full and fair presentation of claims to the state court requires "full factual development" of the claims in that forum. *Kenney v. Tamayo-Reyes*, 504 U.S. 1, 8 (1992). "[T]o be fairly presented in the state courts, a claim must have been raised throughout the state appeals process, not just at the tail end in a prayer for discretionary review." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004).

Here, plaintiff failed to raise his double jeopardy ground with the Washington Court of Appeals. Initially, when he brought his motion to dismiss at the trial court, he specifically argued that his conviction for both first degree aggravated murder and first degree felony murder violated double jeopardy. *See* Dkt. 10, Ex. 22 at p.5; Ex. 24 at p. 78. He also specifically raised double jeopardy in his motion for discretionary review with the Washington Supreme Court. *Id.*, Ex. 34 at p. 1. However, when he appealed the trial court's decision as to his motion to dismiss,

1    he only challenged the fact that petitioner was denied counsel at the trial stage in violation of

2    Washington Rule of Criminal Procedure 3.1. *Id.*, Ex. 26. His counsel made no mention of double

3    jeopardy in his brief, and petitioner made no mention of double jeopardy in his *pro se* statement

4    of addition grounds. By failing to raise double jeopardy with the Washington Court of Appeals,

5    petitioner deprived the state courts of a full and fair opportunity to examine that constitutional

6    allegation. It is inappropriate for a federal habeas court to examine an alleged constitutional

7    violation until the state courts have had their own opportunity and have completed a full round of

8    the state appeals process. Therefore, petitioner has not exhausted his double jeopardy ground and

9    the Court may not examine it.

10          Second, petitioner has also failed to raise his right to counsel claim with any state court.

11   Petitioner did request counsel in superior court, and asked the superior court to reconsider when

12   that court declined to provide counsel. Dkt. 10, Ex. 22 at pp. 6-8. However, he did not specify

13   why he believed he was entitled to counsel, and so did not put that court on notice that he

14   believed it was a constitutional violation. *Id*. On appeal, petitioner's counsel argued that

15   petitioner was improperly denied counsel at the superior court. *Id.*, Ex. 26 at p. 1. However, that

16   argument objected to the denial of counsel based on Washington Rule of Criminal Procedure 3.1.

17   *Id*. He made no mention of a constitutional violation. Similarly, petitioner's motion for

18   discretionary review to the Washington Supreme Court argued that he was denied counsel based

19   on CrR 3.1, not on any constitutional guarantee. *Id.*, Ex. 34. Petitioner's argument to the state

20   courts regarding his denial of counsel were based wholly on state law grounds, not constitutional

21   grounds. Petitioner thus deprived the state courts of a full and fair opportunity to make a

22   determination as to the constitutionality of petitioner's alleged deprivations. As noted above, a

23   federal habeas court may not make a determination on a habeas ground unless the state courts

24

have already had an opportunity to make their own determination. Therefore, petitioner has failed to exhaust this ground and the Court may not make a determination on it. The Court thus recommends that petitioner's habeas petition be denied.

### B. Procedural Default

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). An implied procedural bar exists when a petitioner has failed to fairly present his claims to the highest state court and would now be barred from returning to do so by an adequate, independent, and mandatory state procedural rule. *Moreno v. Gonzalez,* 116 F.3d 409, 411 (9th Cir. 1997). Procedural default is an affirmative defense, and the state has the burden of showing that the default constitutes an adequate and independent ground. *Insyxiengmay v. Morgan*, 403 F.3d 657, 665-66 (9th Cir. 2005). The Court may only review a petitioner's procedurally defaulted grounds if he can show: (1) cause for default in state court and actual prejudice from the alleged error; or (2) that federal review is required to prevent a miscarriage of justice. *Coleman*, 501 U.S. at 748.

Here, both of petitioner's grounds have been impliedly procedurally defaulted. Pursuant to Washington statute, a state court will not grant collateral relief if the action is filed more than one year after the challenged judgment becomes final. RCW 10.73.090(1). A judgment becomes final under that statute on the latest of the following dates: (1) the date the judgment is filed with the clerk of court; (2) the date an appellate court issues its mandate on direct appeal; or (3) the date the United States Supreme Court denied certiorari. RCW 10.73.090(3). Here, petitioner's amended judgment and sentence became final on August 25, 2015, the date it was filed with the state court clerk. Dkt. 10, Ex. 23. As respondent correctly notes, the appeal from the state court's decision to deny petitioner's motion under CrR 7.8 was part of the collateral review process, not

1    a direct appeal as prescribed in RCW 10.73.090. However, even if the Court considered that

2    appeal for purposes of the one year statute of limitations, the mandate for that appeal was entered

3    on April 5, 2017. *Id.*, Ex. 37. In either case, it has now been more than one year since petitioner's

4    judgment became final pursuant to RCW 10.73.090. Thus, petitioner's claims in state court

5    would now be barred under an adequate, independent, and mandatory state procedural rule and

6    are procedurally defaulted. Therefore, the Court recommends denying petitioner's habeas

7    petition.

8        **II.    Merits**

9        Defendants have also briefed the merits of petitioner's habeas grounds. However,

10   because the Court concludes that petitioner has failed to properly exhaust these grounds in state

11   court before coming to federal court and is now procedurally defaulted, the Court declines to

12   analyze petitioner's habeas petition on its merits.

13                   **CERTIFICATE OF APPEALABILITY**

14       Petitioners seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

15   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

16   (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

17   has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

18   2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

19   disagree with the district court's resolution of his constitutional claims or that jurists could

20   conclude the issues presented are adequate to deserve encouragement to proceed further."

21   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

22

23

24

(2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

## CONCLUSION

For the reasons stated above, the Court recommends petitioner's habeas petition be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **July 6, 2018**, as noted in the caption.

Dated this 13th day of June, 2018.

J. Richard Creatura
United States Magistrate Judge